UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MITCHELL BETCKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:16-cv-00117-SLC |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Mitchell Betcke appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB").[1] For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

### I. PROCEDURAL HISTORY

On January 24, 2013, Betcke filed an application for DIB, alleging disability as of April 25, 2012. (DE 12 Administrative Record ("AR") 151-52). Betcke's application was denied initially and upon reconsideration. (AR 94-110). Betcke timely filed a request for a hearing (AR 11-12), and on September 2, 2014, a hearing was held before Administrative Law Judge Steven Neary (the "ALJ") (AR 29-63). At the hearing, Betcke; Betcke's mother, Carolyn Betcke ("Carolyn"); Alan Neuenschwander, a vocational counselor at the Rehabilitation Hospital of Indiana ("Neuenschwander"); and Vocational Expert Sharon Ringenberg (the "VE") testified.[2]

---

[1] All parties have consented to the Magistrate Judge. (DE 15); *see* 28 U.S.C. § 636(c).

[2] Betcke's sister was also present at the hearing. (AR 31).

(AR 29). Betcke was represented by attorney Randal Forbes at the hearing. (AR 29). On October 22, 2014, the ALJ issued an unfavorable decision, finding that Betcke could perform jobs existing in substantial numbers in the national economy, and therefore, was not disabled under the Act. (AR 10-28). Betcke requested that the Appeals Council review the ALJ's decision, and the Appeals Council denied his request, making the ALJ's decision the final, appealable decision of the Commissioner. (AR 1-9).

Betcke filed a complaint with this Court on April 5, 2016, seeking relief from the Commissioner's final decision. (DE 1). Betcke alleges that he is disabled as the result of an injury at the workplace, which caused the following: a fractured right temporal bone, bilateral frontal lobe hemorrhagic contusions, a right temporal epidural hematoma, bilateral subdural hematomas, pneumocephalus, and a temporal lobe contusion. (DE 16 at 2 (referencing AR 258-331)). In his appeal, Betcke alleges that the ALJ erred by: (1) not addressing the VE's testimony regarding Betcke's limitations in crafting the RFC; and (2) failing to adequately address witness testimony in the credibility determination. (DE 16 at 5).

## II. THE ALJ's FINDINGS

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether Betcke is disabled as defined by the Act, the ALJ conducted the

2

familiar five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id*. at 885-86.

At step one, the ALJ found that Betcke had not engaged in substantial gainful activity since his alleged onset date of April 25, 2012. (AR 15). At step two, the ALJ found that Betcke had the following severe impairments: a seizure disorder; depression; anxiety disorder, not otherwise specified; and residual effects from a traumatic brain injury. (AR 15-16).

At step three, the ALJ concluded that Betcke did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 16-18). Before proceeding to step four, the ALJ determined that Betcke's symptom testimony was "not entirely credible" (AR 19), and assigned him the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: cannot work at occupations which require working at unprotected

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC, or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(5).

3

> heights or operating hazardous moving machinery; cannot engage
> in complex or detailed tasks, but remains capable of performing
> simple routines tasks, throughout the workday, which do not
> require working at a rapid pace, do not require working with the
> public, and do not require working in close proximity or
> cooperation with others.

(AR 18). Based on this RFC, the ALJ found at step four that Betcke could not perform his past relevant work. (AR 20). The ALJ considered the testimony of the VE, in part, and other evidence in the record and determined at step five that Betcke could perform other jobs in the national economy that exist in significant numbers, and therefore, his application for DIB was denied. (AR 20-21).

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id*. Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id*. Nonetheless, "substantial

evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.* (citing *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)).

## IV. ANALYSIS

### A. *Credibility Determination*

Betcke argues that the ALJ erred by failing to meaningfully address the credibility of testimony at the hearing regarding the severity of Betcke's limitations. (DE 16 at 7 (citing *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). An ALJ's credibility determination is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Nelson v. Apfel*, 131 F.3d 1228, 1237-38 (7th Cir. 1997). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), his determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435; *see Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness"). The credibility determination "'must be specific enough to make clear . . . how much weight the ALJ gave to the [witness's] testimony and the reasons for that decision.'" *Daniels v. Colvin*, No. 12 C 9317, 2014 WL 2158999, at *13 (N.D. Ill. May 23, 2014) (quoting *Hill v. Astrue*, 295 F. App'x 77, 81 (7th Cir. 2008)).

Here, the ALJ did not identify any conflict between the testimonies and evidence of record in support of his credibility determination. *See Peterson v. Massanari*, No. 99 C 6026, 2001 WL 831318, at *10 (N.D. Ill. July 24, 2001) (faulting the ALJ for failing to "discuss what

5

medical evidence is inconsistent with Plaintiff's complaints regarding his limitations due to his back pain"). With regard to Betcke, the ALJ stated only:

> After careful consideration of the evidence . . . the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the existence of other symptoms/impairments, and the intensity, persistence and limiting effects of certain symptoms, are not entirely credible for the reasons explained in this decision.

(AR 19). Similarly, the ALJ found that Carolyn's testimony was "supportive of the claimant's alleged limitations," but that there were "substantial reasons based in the medical evidence, or lack of evidence, for discounting the limiting effects of the claimant's problems." (AR 20). With regard to both witnesses, the ALJ provided the type of "single, conclusory statement" regarding a witness's credibility that the Seventh Circuit Court of Appeals has deemed "not sufficient." *Zurawski*, 245 F.3d at 887; *see Peterson*, 2001 WL 831318, at *10. Even more troubling, the ALJ neglected to discuss Neuenschwander's credibility at all. Thus, the ALJ failed to develop or explain the supposed "reasons" why the witnesses "[were] not entirely credible," leaving the Court "to ponder what exactly [] these inconsistencies" are between their testimonies and the medical evidence. *Zurawski*, 245 F.3d at 887.

The Commissioner argues that the ALJ's credibility determination is sound because the ALJ summarized the witnesses' testimonies and supported the assigned limitations with objective medical evidence. The Commissioner is correct that the ALJ summarized the testimony of the witnesses (*see* AR 18-19); however, this does not cure the ALJ's failure to discuss the credibility of their testimony. More specifically, all three witnesses testified that Betcke's impairments caused more severe limitations than those assigned in the RFC.

For example, the ALJ limited Betcke to work that "do[es] not require working with the

6

public, and do[es] not require working in close proximity or cooperation with others." (AR 18). In support of this limitation, the ALJ relied on the opinions of two state agency psychologists, which the ALJ found "consistent with all of the testimony at the administrative hearing" that Betcke's interpersonal skills are "at least adequate." (AR 19-20, 487, 498).

However, Neuenschwander testified that Betcke struggles with depression and anxiety, which cause him to be paranoid and to misread situations at the workplace. (AR 52-53). Carolyn and Betcke testified that Betcke "very frequently" gets angry, causing him to yell, slam doors, and "blow up" at his friends and family. (AR 38-41, 54-55). As the VE testified, this testimony as to the severity of Betcke's anger may be inconsistent with the ALJ's finding of adequate interpersonal skills. (AR 59-61). Unfortunately, the ALJ did not give "'specific reasons for [] finding'" the testimony regarding Betcke's anger was not credible. *Zurawski*, 245 F.3d at 887 (quoting SSR-96-7p, 1996 WL 374189, at *2 (July 2, 1996)). This was error, because the ALJ must be "sufficiently specific to make clear to . . . [the Court] the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Breisch v. Comm'r of Soc. Sec.*, No. 1:16-CV-00098-SLC, 2017 WL 3432316, at *6 (N.D. Ind. Aug. 9, 2017) (citation omitted).

Furthermore, the ALJ did not address testimony indicating that Betcke's mental limitations may be more severe than the mental limitations assigned in the RFC. Betcke and Carolyn testified that Betcke has trouble with organization, understanding instructions, and following through on tasks. (AR 42, 56). Betcke and Carolyn also testified that Betcke gets lost going to appointments, and that despite his efforts, he becomes so disoriented that he sometimes needs to be picked up or driven around. (AR 42, 47, 56). Betcke also carries a notebook to write things down, but it does not always help him to complete a task. (AR 47-48).

Neuenschwander explained that Betcke has frontal lobe damage causing complications with executive function, following through on tasks, and organization; and that he gets lost, has trouble maintaining and reaching goals, and attending appointments. (AR 51). Neuenschwander testified that it is hard for Betcke to understand instructions or keep his memory intact, and that Betcke's processing speed is so damaged that he cannot accomplish tasks quickly enough to sustain employment. (AR 52).

Again, the ALJ mentioned some of these statements in summarizing the witnesses' testimonies, but he did not discuss why these statements were not credible. Thus, the ALJ "failed to explain in sufficient detail why testimony as to . . . [Betcke's] symptoms was not credible. . . . As such, the necessary degree of specificity is lacking." *Rounds v. Astrue*, 549 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008) (citing *Zurawski*, 245 F.3d at 887).

In conclusion, the Court "cannot discern whether the credibility determination is correct because" the ALJ failed to cite specific examples, facts, or reasons in support of the determination. *Eggerson v. Astrue*, 681 F. Supp. 2d 961, 967 (N.D. Ill. 2008). Thus, the ALJ erred by failing to "build an accurate and logical bridge between the evidence and the result." *Shramek*, 226 F.3d at 811 (citation and internal quotation marks omitted).

### B. The VE's Testimony

Next, Betcke argues that the ALJ erred in crafting the RFC by failing to address portions of the VE's testimony that contradicted the ALJ's ultimate conclusion that Betcke can perform unskilled competitive work. The VE's testimony included the following exchange:

> Q. Assume an individual the same age, education, and past work experience [] who had limitations consistent with the testimony presented. With those limitations, would that individual be capable of any of Mr. Betcke's past employment or any other jobs that exist in significant numbers in the national economy?

> A. I would say no based on several things. . . . There's always
> some standards in each job. They would not be able to maintain
> competitive employment and if someone can't get along with
> supervisors or co-workers and they are inappropriate in how they
> respond, they would not be able to maintain competitive
> employment.

(AR 59-60). Later on, Betcke's attorney inquired how an employer would react to an employee having an outburst or raising his voice against a supervisor or employer, and the VE responded that such behavior "may get someone fired." (AR 60). When asked "if a person had to be redirected to task more than twice an hour, would that be consistent with competitive unskilled employment," the VE responded, "No, it would not." (AR 61).

The ALJ did not mention these portions of the VE's testimony anywhere in the decision. Moreover, the VE's testimony that Betcke's mental limitations and interpersonal skills prohibit him from performing competitive unskilled work contradicts the opinions of the state agency psychologists, which reflected that Betcke "has the ability to learn, remember and comprehend simple instructions" (AR 19-20, 487, 498), and upon which the ALJ relied in crafting the RFC.

The Commissioner argues that a remand is not warranted because the RFC determination is adequately supported by medical evidence of record. While it is true that the ALJ cited medical opinions in support of the assigning limitations, "the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citations omitted). But that is exactly what the ALJ did by focusing on evidence that supports a finding of non-disabled (the opinion of the state agency psychologists), while ignoring an entire line of evidence that supports a finding of disabled (the VE's testimony that Betcke could not perform unskilled competitive work). *See Denton*, 596 F.3d at 419 (citations omitted); *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (explaining that an ALJ must "sufficiently articulate his

9

assessment of the evidence to assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning" (alteration in original) (citation omitted)).

Moreover, the Court cannot "trace the path of the ALJ's reasoning" or determine whether the ALJ considered these portions of the VE's testimony at all. *Rohan*, 98 F.3d at 971 (citation omitted); *see Brindis ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("[T]he ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." (citing *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985))). Therefore, the ALJ's decision will be remanded so that the ALJ may adequately consider the testimonies of Betcke, Carolyn, Neuenschwander, and the VE.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is directed to enter a judgment in favor of Betcke and against the Commissioner.

SO ORDERED.

Entered this 27th day of September 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge